SIGNED.

Dated: September 12, 2011

**James M. Marlar, Chief Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| JEFFREY B. HODDER and JEAN L HODDER, | ) | No. 4:08-bk-09586-JMM |
| Debtors. | ) | Adversary No. 4:10-ap-00798-JMM |
| JEFFREY B. HODDER and JEAN L HODDER, | ) | **MEMORANDUM DECISION** |
| Plaintiffs, | ) | |
| vs. | ) | |
| WILSHIRE CREDIT CORPORATION as servicer for LASALLE BANK, NA; LASALLE BANK, NA; and MORTGAGE LENDERS NETWORK, USA, INC., an Arizona corporation, | ) | |
| Defendants. | ) | |

## **INTRODUCTION**

Before the court, in this adversary proceeding, is a motion for judgment on the pleadings, filed by the Defendants (Adv. ECF No. 29).

Prior to a discussion leading to a ruling on the motion, it is necessary to review the status of the Debtors' case to date, in order to place the current controversy into its proper context.

# THE CHAPTER 13 CASE

## A. In General

The Debtors filed their Chapter 13 case on July 30, 2008, slightly over three (3) years and one (1) month ago. A Chapter 13 case is strictly voluntary, and a debtor must provide, in a plan, for payments to creditors over a period of time that is no less than three years, and no more than five years. 11 U.S.C. §§ 1322(a)(4); (d)(2)(C); 1325(b)(4)(A). In some circumstances not applicable here, a plan period may be less than three years. 11 U.S.C. § 1325(b)(4)(B).

To date, the Debtors have not yet had a plan confirmed, despite having filed five different plans (ECF Nos. 12, 51, 71, 99 and 107[1]). Their current plan promises to pay in, to the Trustee, $29,817.20 over a five-year (sixty-month) period. To date, they have paid in (through September 15, 2011) the total sum of $18,957.84.[2] This is what the Trustee has on hand.

The Debtors most recent plan (ECF No. 107) specifies that the Debtors will make payments as follows:

| **Amount** | **Months** | **Total** |
|---|---|---|
| $325 | 1-11 | $3,575 |
| $556 | 12-59 | 26,132 |
| $110.20 | 60 | 110.20 |
| | | $29,817.20 |

---

[1] "Adv. ECF No." refers to the adversary proceeding docket numbers and "ECF No." refers to the administrative case docket numbers.

[2] Chapter 13 Trustee's website.

Since we are now in month 38 of the plan, the Debtors should have paid in, to the Trustee:

| **Amount** | **Months** | **Total** |
|---|---|---|
| $325 X 11 | 1-11 | $3,575 |
| $556 X 25 | 12-37 | <u>13,900</u> |
| | | $17,475 |

So far, the Debtors are in monetary compliance with their plan promises.

### B.  The Debtors' Property

When the Debtors filed for bankruptcy protection, they listed their significant property interests as:

| **Real Property** | **Value** | **Lienholder** | **Lien Amount** |
|---|---|---|---|
| 3736 S. Opal, Mesa, AZ | $235,000 | Homeowners Financial | $214,467 |
| 5778 E. Broadway, Apache Junction, AZ | $300,000 | Wilshire Credit Corporation (1st and 2nd mortgages) | $386,619 |

| **Personalty** | **Value** | **Lienholder** | **Lien Amount** |
|---|---|---|---|
| 401(K) | $7,450 | None | $0 |
| 2006 Ford F150 | $24,997 | Ford Motor Credit | $24,997 |
| 2006 Ford F350 | $36,663 | Ford Motor Credit | $36,663 |
| Equipment | $4,000 | None | $0 |

(Schedules, ECF No. 10).

3

Case 4:10-ap-00798-JMM   Doc 67   Filed 09/12/11   Entered 09/13/11 10:20:08   Desc
Main Document - Motion for Judgment on Pleadings    Page 3 of 9

## C. Stay Relief

Several stay relief motions were filed by the various secured creditors, and dispositions occurred as to affected properties, as follows:

| | |
|---|---|
| 3736 S. Opal<br>Mesa, AZ | Stay lifted on October 27, 2008, in favor of the petitioning lienholder. Current status: Trustee's Sale occurred (ECF No. 34). No remaining claim. |
| 5778 E. Broadway<br>Apache Junction | Order entered on May 26, 2009, wherein payments were to resume, and upon any future default thereunder, the stay would terminate (ECF No. 64). Several subsequent motions and proceedings have followed, involving the residence. |
| 2006 Ford F350 | Stay lifted. Vehicle surrendered (ECF No. 65). Order dated May 26, 2009. |
| 2006 Ford F150 | Stay lifted. Vehicle surrendered (ECF No. 48). Order dated April 9, 2009. |

During the proceedings, the Debtors have taken issue with the secured claim of the creditor with a lien on the Broadway property. More about that later.

## D. The Most Recent Plan

Only the most recent plan filed by the Debtors is pertinent to this discussion, their past four plans having fallen by the wayside. It is the Debtors' Fifth Amended Plan, filed a year ago on September 16, 2010 (ECF No. 107).

The most recent plan challenges the lien or liens attaching to the Broadway property, and seeks a judicial determination eliminating them entirely. That is the relief sought in Adversary

4

Case 4:10-ap-00798-JMM   Doc 67   Filed 09/12/11   Entered 09/13/11 10:20:08   Desc
Main Document - Motion for Judgment on Pleadings   Page 4 of 9

No. 10-ap-00798. It is also how the current plan treats that creditor: avoid the liens entirely and pay the creditor nothing.

Since September, 2010, the focus of all legal activity in the case has been in the adversary proceeding, with the Debtors seeking to do away with the secured liens on the Broadway property. That strife has completely stalled the parallel effort towards confirmation of a plan.

### E. Payments to the Trustee

The Trustee's website reflects that since filing, the Debtors have paid $18,957.84 into the Trustee's accounts, for the benefit of the Debtors' creditors. Perhaps a portion of that fund may be used, in an amended plan, toward payment of any post-petition arrearage. The court cannot comment, nor does it know, what the future course of these proceedings will be.

### F. The Course of the Secured Claim (Broadway Property) in the Administrative Case

During the run of this case, different things have happened relative to the Broadway property. It is best to describe that course of events in chronological order.

| | |
|---|---|
| August 12, 2008 | The Debtors' schedules listed the property as being worth $300,000, with $386,619.94 in liens against it (Schedule A). The creditor is noted as being Wilshire Credit Corporation ("Wilshire"), and the debt is not checked as being disputed, contingent nor unliquidated (Schedule D). (ECF No. 10.) |
| August 21, 2008 | The Debtors' plan lists Wilshire as the lienholder holding a $391,618 claim on the Debtors' residence, with a $15,000 arrearage (ECF No. 12). There is no comment regarding any dispute with Wilshire. In this version of the plan, the property is valued at $415,000. |
| September 11, 2008 | Wilshire files a secured claim (on its first lien) for $328,878.33 (Claim No. 4, Claims Register). |
| October 1, 2008 | Wilshire files for stay relief (ECF No. 24). |

| | | |
|---|---|---|
| October 13, 2008 | | The Debtors respond to stay relief by acknowledging they are delinquent, but asserting that they can become current. They raise no other issues concerning any dispute with the lienholder (ECF No. 30). |
| November 24, 2008 | | Wilshire files a secured claim on its second lien for $88,823.14 (Claim No. 11, Claims Register). |
| May 26, 2009 | | The Debtors enter into a stipulation with Wilshire, which the court approves, agreeing that: |

        1.      Wilshire is the servicer for LaSalle Bank, as Trustee;

        2.      The creditor holds a valid lien;

        3.      The Debtors have defaulted in payments from August, 2008, forward;

        4.      The Debtors wish to remain current henceforth, and will begin, once more, making their regular monthly payments on June 1, 2009;

        5.      The arrearage of $25,062 is agreed to and shall be addressed in the plan;

        6.      If the Debtors fail to make payments, after a notice to cure is delivered, the stay is lifted and the creditor may proceed to a trustee's sale.

(ECF No. 64).

| | |
|---|---|
| June 5, 2009 | Debtors seek a modification of their stipulation, incorporated within the court's order of May 26, 2009 (ECF No. 67). The Debtors never obtained a hearing date, nor a ruling thereon. |
| December 2, 2009 | Wilshire files a default notice under the May 26, 2009 stipulation (ECF No. 78), and lodges an order lifting the stay (ECF No. 79). |
| December 3, 2009 | Debtors object to stay relief and move to rescind the stipulation of May 26, 2009. The Debtors argue that their request for modification has stayed the finality of the order of May 26, 2009. |
| | For the first time, they argue that the moving party, as a servicer, has no legal standing (ECF No. 80). |
| | The Debtors then file objections to Claims Nos. 4 and 11, essentially on standing grounds (ECF No. 81). |

6

Case 4:10-ap-00798-JMM   Doc 67   Filed 09/12/11   Entered 09/13/11 10:20:08   Desc
Main Document - Motion for Judgment on Pleadings   Page 6 of 9

| | | |
|---|---|---|
| March 1, 2010 | | The court overrules the Debtors' objections to Wilshire's Claims Nos. 4 and 11 (ECF No. 87 and 88), and allows them. |
| March 11, 2010 | | Debtors file a Rule 59 motion concerning the court's March 1, 2009 order (ECF No. 90). Again, the Debtors did not request a hearing, and no order was entered on this motion. |
| May 4, 2010 | | Debtors file an adversary complaint against Wilshire, 4:10-ap-00798-JMM. They raise standing and MERS issues. |
| June 10, 2011 | | Wilshire files another pleading, pointing out Debtors' failure to live up to the stipulation ordered by the court on May 26, 2009 (ECF No. 114), and note the continuation of the Debtors' pattern of failing to keep its residential liens current, on a post-petition basis. |
| June 27, 2011 | | Debtors again oppose the default notice, contending that the court has never ruled on their motion to rescind, and maintaining that the Wilshire claims are fraudulent and that the servicer has no legal standing (ECF No. 118). |
| July 20, 2011 | | A hearing is held. Debtors' attorney states that Debtors are delinquent on their mortgage payments by at least one year (ECF No. 120). The hearing was continued one month. |
| August 11, 2011 | | As requested by the court, the creditor produced the original promissory note to Debtors' counsel, and stated that the Debtors have not made payments for three years. The court takes all matters under advisement (ECF No. 122). |

## DISCUSSION AND RULINGS

### A. Administrative Matters

The Debtors are judicially estopped, on several fronts, from challenging Wilshire's secured obligations. First, they signed their schedules, under oath, listing and not disputing Wilshire's secured status and debts. Second, in other pleadings (their response to stay relief and their later stipulation), they acknowledged the validity of the lien and agreed to pay it. Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782-83 (9th Cir. 2001). That agreement and order have never been set aside. Nor has the order of May 26, 2009 (ECF No. 64) been stayed.

Accordingly, based on the administrative record, the court will enter orders which:

1. Denies the Debtors' attempt to rescind the stipulation and order dated May 26, 2009 (ECF No. 64). This ruling disposes of ECF No. 67.

2. Denies the Debtors' second effort to rescind (ECF No. 80).

3. Denies the Debtors' Rule 59 motion regarding its rulings on Claims Nos. 4 and 11 (ECF Nos. 87, 88 and 90).

4. Based on the acknowledged failure to pay under the May 26, 2009 stipulation (ECF No. 64), the court will lift the stay on the real property located at 5778 E. Broadway, Apache Junction, Arizona in favor of Wilshire Credit Corporation, LaSalle and any and all parties claiming by, through or under them. The secured creditor has met the low threshold of showing a "colorable claim." In re Veal, 450 B.R. 897 (9th Cir. BAP 2011).

5. Due to the Debtors' inability to confirm a Chapter 13 plan for over three years, the court orders that this case shall be dismissed, unless the Debtors amend their plan to conform to the rulings herein, within thirty (30) days. 11 U.S.C. § 1307(c)(1). Moreover, the Debtors have failed to maintain current payments on their residence, from the date of filing forward, as the law requires. 11 U.S.C. § 1322(b)(2) and (5). This represents a severe deficiency in their Chapter 13 case. The Debtors will need to become creative to overcome that statutory hurdle.

### B. Adversary Proceeding No. 4:10-ap-00798-JMM

Based on the proceedings outlined above, and the court's findings, in essence, that the creditor's Claims Nos. 4 and 11 are allowed, those rulings are res judicata, or, at a minimum, the law of the case. In addition, due to the other findings made herein, the Debtors' contentions in the adversary proceeding are rendered moot. Having decided the validity of the Wilshire/LaSalle

1 claims for stay relief purposes, this court has no further jurisdiction to decide the state law issues
2 raised by the Debtors.  <u>Stern v. Marshall</u>, 131 S. Ct. 2594 (2011).

In addition, as the moving party has produced the original promissory note, it may proceed to enforce any non-payment thereunder.  It has established a "colorable claim" sufficient for a grant of stay relief.  <u>Veal</u>, 450 B.R. 897.

Any legal impediment to the Debtors' arguments regarding the status of MERS has now been resolved by the Ninth Circuit's decision, rendered September 7, 2011, which disagrees with the Debtors' contentions in this case, and minimizes their concerns over the role played by MERS in this case.  <u>Cervantes v. Countrywide Home Loans, Inc.</u>, No. 09-17364, slip. op. (9th Cir. Sept. 7, 2011).

Any outstanding discovery requests sought by the Debtors, against the Defendants, will be DENIED.

An order will be entered dismissing the Debtors' adversary action.


DATED AND SIGNED ABOVE.


To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:
All parties this adversary proceeding